UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| QUINNDALE JERNIGAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCHNUCK MARKETS, INC. )<br>)<br>Defendant. ) | Cause No:   4:20-cv-01075-JCH<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.   INTRODUCTION

Plaintiff Quinndale Jernigan is an African American male who was formerly employed by Schnuck Markets, Inc. (hereinafter "SMI") as a Checker at SMI's "Cool Valley" supermarket location. In a single claim for violation of 42 U.S.C. § 1981, filed nearly 4 years after Plaintiff's termination, Plaintiff asserts that SMI terminated his employment because of his race. Specifically, Plaintiff's claim for race discrimination hinges on his misguided belief that he was terminated for drinking water at his cash register when Caucasian employees were not terminated for this reason. The uncontroverted facts of this case demonstrate clearly that Plaintiff was terminated for insubordination, and that his race had no bearing whatsoever on the decision to separate his employment.

Defendant SMI is a regional supermarket chain operating more than one hundred supermarket locations in four states, with the majority of its stores located in the St. Louis metropolitan area. Plaintiff's employment with SMI began in May of 2012, and continued until his termination in March 2015. Plaintiff was subsequently returned to work through a labor

1

Case: 4:20-cv-01075-JCH   Doc. #: 15   Filed: 06/11/21   Page: 2 of 9 PageID #: 58

arbitration proceeding, and started working as a checker at the Cool Valley location on June 1, 2016.

In accordance with Federal Food Code and SMI policy, SMI employees are not permitted to consume food or beverages in food preparation areas or at check lanes. Employees may access beverages in employee breakrooms or utilize drinking fountains as needed. On July 1, 2016, Plaintiff was observed to be consuming a beverage at his check lane. Plaintiff failed to follow a reasonable direct order from his supervisor when he was specifically warned that his employment would be terminated if he did not remove his beverage from his check lane. Plaintiff did not remove the beverage, and his employment was subsequently terminated due to this insubordination.

Plaintiff does not allege a single fact which could lead a jury to conclude that Plaintiff was terminated because of his race. Plaintiff has no direct or circumstantial evidence of race discrimination, as is required to establish a claim for violation of § 1981. Even if Plaintiff could establish a prima facie case for discrimination, SMI had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Because Plaintiff cannot carry his evidentiary burdens, Plaintiff's claim fails as a matter of law and SMI is entitled to summary judgment.

## II.   FACTUAL INFORMATION

All facts material to this case, including supporting exhibits, are detailed in SMI's Statement of Uncontroverted Material Fact, filed contemporaneously herewith.

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

2

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hood v. Aaron Rents, Inc.*, 2009 WL 4828709 (E.D. Mo. Dec. 7, 2009). "The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"Summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mount Pleasant v. Assoc. Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). "There is no 'discrimination case exception' to the application of summary judgment ...." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. at *1; see also *Thomas v. Special Olympics Mo., Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. W.D. 2000) (A defendant is entitled to summary judgment by negating the plaintiff's claim by establishing that the plaintiff has not produced evidence sufficient to allow the jury to find in his/her favor.).

## IV.  ARGUMENT

Plaintiff's lawsuit alleges a single claim against SMI for violation of 42. U.S.C. § 1981. (See Doc. 4). In order to establish a prima facie case under § 1981, Plaintiff must show the following: "(1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." *Daniels v. Dillard's, Inc.,* 373 F.3d 885, 887 (8th Cir.2004) (citation omitted). Because Plaintiff has not alleged any direct evidence of

3

discrimination, his § 1981 claim is analyzed under the McDonnell Douglas burden-shifting framework. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)).

SMI is entitled to summary judgment because Plaintiff cannot make a prima facie claim for race discrimination in violation of § 1981. The evidence in this case is completely devoid of facts that would indicate SMI intended to discriminate against Plaintiff because of his race. Absent facts to support this element of his § 1981 claim, the analysis of Plaintiff's lawsuit ends and the claim fails as a matter of law.

Even if Plaintiff could state a prima facie claim, thereby shifting this Court's review to the next steps in the burden-shifting analysis, SMI had a legitimate non-discriminatory reason for terminating Plaintiff's employment, and there is no evidence of pretext.

**A.     Plaintiff has not alleged sufficient evidence to support his claim that he was discriminated against based on his race.**

Plaintiff's claim that he was discriminated against based on his race is based entirely on Plaintiff's own vague and unfounded conclusions. No SMI employee ever told Plaintiff that his race was a factor in his termination. (SOF 21). There is no dispute that the Plaintiff if a member of a protected class (SOF 1), but the mere fact that Plaintiff is Black is insufficient to meet the burden of production that his termination was discriminatory. See *Serben v. Inter-City Mfg. Co.*, 36 F.3d 765, 766 (8th Cir. 1994); *Harris v. Nicholson,* No. 4:06CV463, 2008 U.S. Dist. LEXIS 70024, at *11 (E.D. Mo. Sept. 17, 2008).

In an attempt to bolster his claim, Plaintiff argues that Caucasian checkers were not terminated for drinking water at cash registers. This argument is misplaced because Plaintiff was not terminated for drinking water at cash registers; he was terminated for insubordination. (SOF

4

17). Plaintiff has failed to identify any Caucasian employees of SMI who were insubordinate and were not terminated.

Plaintiff's reliance on alleged discriminatory and harassing conduct by Center Store Lead Christine Bonaldi simply does not establish even an inference that SMI intended to discriminate against him based on his race, as is required for a viable § 1981 claim. Furthermore, the crux of Plaintiff's allegations of discrimination relate to his perception of interactions with Ms. Bonaldi, who is not a managerial employee of SMI. (SOF 22, 24). Ms. Bonaldi had no authority to terminate the employment of any other employee, including Plaintiff. (SOF 23). She had no role whatsoever in his termination. (SOF 23). That fact that Mr. Johnson, the manager on duty who informed Plaintiff of his termination, and Keith Brown, the manager of the Cool Valley store, are both also African American male defeats further any inference of discriminatory animus against Plaintiff. (SOF 8, 9).

**B.     SMI had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.**

Even if this Court were to determine that Plaintiff is able to satisfy the prima facie requirements for a § 1981, SMI is still entitled to summary judgment because Plaintiff's insubordination was a legitimate non-discriminatory reason for terminating Plaintiff's employment. The Eighth Circuit has "repeatedly held that insubordination and violation of company policy are legitimate reasons for termination." *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999)); *Ward v. Procter & Gamble Paper Products Co.*, 111 F.3d 558, 559 (8th Cir. 1997).

Contrary to Plaintiff's allegations that he was terminated for drinking water at his check lane, the evidence makes clear that the reason for Plaintiff's termination was insubordination.

5

Plaintiff was instructed the he was not allowed to drink water at his register. (SOF 12).[1] In fact Marvin Johnson, a member of SMI management, expressly warned Plaintiff that his employment would be terminated if he did not stop drinking water at his cash register. (SOF 15). When Plaintiff was insubordinate in his failure to follow Mr. Johnson's direct order, Plaintiff accepted the consequence of termination. (SOF 15, 16, 17). While Plaintiff may not agree with SMI's reason for terminating his employment, this does not give rise to an actionable claim for employment discrimination. *Goliday v. GKN Aerospace-St. Louis Aerospace*, No. 4:11CV729 JCH, 2012 WL 2885358, at *5 (E.D. Mo. July 13, 2012) (citing *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.")

Plaintiff's argument includes a contention that he had a doctor's note, which he presumably believes should have given him the ability to drink water at the register. While Plaintiff did present a medical statement to Mr. Johnson, the note simply indicated that Plaintiff needed to remain hydrated. (SOF 13). Plaintiff's lawsuit does not include claims for disability discrimination or failure to accommodate, and Plaintiff has no facts to support a convoluted claim that his doctor's note was somehow connected with alleged racial discrimination. Mr. Johnson never told Plaintiff that he could never drink water at any time while at work; Mr. Johnson instructed Plaintiff to take the water to his register where he would be able to access it at his convenience throughout his shift.

---

[1] Plaintiff was warned about this policy within the month before his termination. (SOF 11).

6

(SOF 14). This had nothing to do with Plaintiff's race, Mr. Johnson was simply enforcing company policy.

In asking Plaintiff to remove his beverage from his check lane, Mr. Johnson was attempting to bring Plaintiff into compliance with company policy. (SOF 4). Plaintiff was made aware of these policies through SMI's handbook, and through previous conversations with management. (SOF 4, 11). Plaintiff's own subordination is the only reason for his termination. There is no evidence whatsoever to indicate that Plaintiff's race factored into the termination decision.

C.  **Plaintiff has not demonstrated that SMI's reasons for terminating his employment are pretextual.**

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff has not alleged facts or presented evidence that could lead a jury to conclude that SMI's reasons for terminating his employment are pretextual. "[A]t the pretext stage of the *McDonnell Douglas* burden-shifting framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Patterson v. EFPP, LLC*, No. 4:06CV556 JCH, 2007 WL 2507755, at *5 (E.D. Mo. Aug. 30, 2007) (citing *Rodgers,* 417 F.3d at 853). Thus, to demonstrate pretext, Plaintiff must show that he and the employees outside his protected group were, "similarly situated in all relevant respects." *Id.*

As noted above, Plaintiff fails to identify any Caucasian employees who engaged in insubordination and were not terminated. Plaintiff does not even identify any specific Caucasian employees who were instructed not to drink water at their check lanes. In fact, Plaintiff testified during his deposition that he believed all checkers, including African American checkers, were permitted to drink water at their registers. (SOF 18). Based on the evidence in this case, the Plaintiff

7

cannot carry his burden of demonstrating that SMI's reason for terminating his employment was pretext for a discriminatory animus.

### V.     CONCLUSION

SMI terminated the Plaintiff's employment because of the Plaintiff's insubordination. The evidence in this case makes clear that Plaintiff's race had nothing to do with his termination, and that SMI had no intent to discriminate against Plaintiff. Plaintiff was instructed not to drink water at his check lane and was warned this is failure to follow this instruction would result in his termination. Plaintiff did not comply with this reasonable, direct order. Plaintiff's employment was subsequently terminated. Because Plaintiff cannot carry his burden of proof at any step of his claim, SMI is entitled to summary judgment.

WHEREFORE, Defendant Schnuck Markets, Inc. respectfully requests that the Court grant its motion for summary judgment, award SMI its costs and attorney's fees incurred in this matter, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Audrie R. Howard
Audrie R. Howard, #69144
Ryan C. Turnage, #61831
Schnuck Markets, Inc.
11420 Lackland Road
St. Louis, MO  63146
  (314) 994-4752 – Telephone
  (314) 994-4412 – Facsimile
Email: ahoward2@Schnucks.com
Email:  RCTurnage@Schnucks.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF Filing system, which provided electronic service upon all counsel of record on <u>June 11, 2021</u>:

                                                By:   <u>/s/  Audrie R. Howard</u>